IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRACY ATKINSON, | § | |
| | § | |
| *Atkinson,* | § | SA-21-CV-00178-OLG |
| | § | |
| vs. | § | |
| | § | |
| PRO CUSTOM SOLAR LLC D/B/A | § | |
| MOMENTUM SOLAR, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Pro Custom Solar LLC's Motion for Summary Judgment [#31] and Atkinson's Motion for Partial Summary Judgment [#33]. The District Court referred all pretrial proceedings to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C on July 14, 2022 [#50]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **granted in part and denied in part** and Plaintiff's motion be **granted**.

## I.  Background

This case concerns allegations of unlawful telemarketing. Plaintiff Tracy Atkinson filed this action against Defendant Pro Custom Solar LLC d/b/a Momentum Solar ("Momentum") on February 24, 2021, alleging that Momentum placed telephone calls and sent text messages to Atkinson's cellular telephone for solicitation purposes without Atkinson's consent, despite Atkinson being on the national do-not-call registry. (Compl. [#1], at ¶¶ 10–22.) Atkinson

further claims that, in doing so, Momentum used an "automatic telephone dialing system" prohibited by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* (*Id.*) Atkinson's Complaint asserts two causes of action under the TCPA, as well as a violation of Section 302.101 of the Texas Business & Commerce Code.  Atkinson seeks actual, statutory, and treble damages for these alleged violations.

Momentum moved to dismiss Atkinson's TCPA claims, but the Court denied the motion, finding Atkinson had pleaded enough facts to proceed with discovery.  Momentum thereafter filed its Original Answer and Counterclaim against Atkinson, alleging claims of tortious interference with its prospective economic relations, promissory estoppel,[1] and fraud. (Counterclaim [#12], at ¶¶ 13–27.)  According to Momentum's Counterclaim, Atkinson fraudulently scheduled appointments for solar-panel installation in order to further a planned lawsuit against Momentum, instead of telling Momentum to stop placing the calls.  (*Id.* at ¶¶ 10–12.)

The parties have filed cross motions for summary judgment.  Momentum moves for summary judgment on all claims asserted by Atkinson in her Complaint and for partial judgment on its counterclaims for tortious interference and fraud.  Atkinson seeks partial summary judgment on her claim that Momentum violated the TCPA by soliciting a phone number on the national do-not-call registry and on all of Momentum's counterclaims.  The parties have filed their respective responses and replies [#37, #42, #43, #46, #48], and the motions are ripe for review.

---

[1] Momentum pleaded this claim as "promises causing detrimental reliance."  Texas courts have recognized that detrimental reliance is not a separate cause of action but rather a theory of promissory estoppel.  *See Garcia v. Lucero*, 366 S.W.3d 275, 281–82 (Tex. App.—El Paso 2012, no pet.)  The undersigned therefore construes Momentum's counterclaim as a cause of action for promissory estoppel.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The undisputed summary judgment record establishes the following.  Atkinson has owned a cell phone with the number 210-317-8889 since 2004 and is the account holder for the account to which the telephone number is billed.  (Atkinson Decl. [#33-2], at ¶¶ 4–5.)  This number is a registered number on the national do-not-call registry.  (*Id.* at ¶ 7.)  From January 16, 2020, to January 28, 2020, Atkinson received nine phone calls she believes were initiated by the companies Smart Solar, Pro Custom Solar, and/or Momentum Solar, advertising the sale and installation of solar panels, some of which she recorded.  (*Id.* at ¶¶ 19–50; Call Log [#31-2].)  During this time period, Atkinson used this number as her residential phone and only for personal purposes.  (Atkinson Decl. at ¶¶ 8, 14–15.)  Prior to the calls, Atkinson had never heard of Smart Solar, Pro Custom Solar, or Momentum and had never made any request regarding solar panels, as her homeowners' association does not allow solar panel installation on homes in her neighborhood.  (*Id.* at ¶ 17; Atkinson Dep. [#33-4], at 34:16–24.)

For each of the calls Atkinson answered, she heard a pause and delay before the caller identified himself.  (Atkinson Decl. [#33-2], at ¶ 18.)  On the first call, Atkinson answered, and the agent identified himself as a representative of Smart Solar and explained that he was providing free information about solar government programs.  (*Id.* at ¶¶ 19–50; Audio Recording [#34-5].)  During this call, Atkinson falsely informed the agent that she had been "looking into solar" and responded affirmatively when asked if her name was "Jenny."  (Atkinson Decl. [#33-2], at ¶¶ 47–50; Atkinson Dep. [#33-4], at 34:22–24, 51:19–22; Audio Recording [#34-5].)  At the end of the call, Atkinson agreed to receive a follow-up phone call from a solar expert regarding solar programs.  (Audio Recording [#34-5].)  Later that afternoon, another solicitor called asking for "Roberto."  (Audio Recording [#34-6].)  The caller then asked if he was

4

speaking to "Jenny," and Atkinson again responded affirmatively and again agreed to have someone call her in a few days regarding solar programs. (*Id.*) The following day, on January 17, 2020, Atkinson received a third call, this time from a representative of Momentum, inquiring about a good time for an in-person consultation. (Audio Recording [#34-7].) The representative indicated he would call back the following day to confirm the best time for the consultation with both Atkinson and her husband. (*Id.*) From January 18, 2020, to January 27, 2020, Atkinson received five missed calls from the same number as used by the caller from Momentum, from an almost identical number, or a number from the same Philadelphia area code where Momentum is located. (Atkinson Decl. [#33-2], at ¶¶ 19–50; Call Log [#31-2].)

On January 28, 2020, Atkinson received a new solicitation from Momentum with no reference to the prior calls. (Audio Recording [#34-8].) During this call, the agent inquired about Atkinson's possible interest in solar panels, again referred to her as "Jenny," and Atkinson again indicated her interest, agreeing to set up a free in-person consultation with a Momentum agent for the following day. (*Id.*; Atkinson Decl. [#33-2], at ¶¶ 47–50; Atkinson Dep. [#33-4], at 34:22–24, 51:19–22.) During this call, Atkinson provided information concerning her property and electricity output in preparation for her in-person meeting. (Audio Recording [#34-8]; Def.'s Statement of Facts [#31], at ¶ 18; Pl.'s Statement of Facts [#51], at ¶ 18.)

On the morning of January 29, 2020, Atkinson received a text message from one of the same phone numbers that had previously called her, identifying itself as Momentum. (Atkinson Decl. [#33-2], at ¶ 36.) She also received a voicemail about the time for the in-person appointment and answered one additional call from the scheduling department of Momentum. (Call Log [#31-2].) That afternoon, Atkinson had a brief meeting at her home with a representative from Momentum, at which she confirmed his identify, took his business card and

a brochure, took a photo of him wearing a Momentum shirt, gave him a Gatorade, and then asked him to leave and not call her any more.  (Atkinson Decl. [#33-2], at ¶ 51; Atkinson Dep. [#33-4], at 88:20–23.)  During the meeting she explained to the representative that the purpose of the meeting was to investigate who was making the solicitation calls to her cell phone, not to possibly purchase solar panels.  (Atkinson Decl. [#33-2], at ¶ 52.)

Atkinson admitted in her deposition that she did not have any intent to acquire solar panels or to find out more information about solar panels but rather set up the appointment solely to confirm the identity of the company behind the solicitations so that the company could be held accountable for its unwanted solicitations.  (Atkinson Dep. [#33-4], at 55:16–24.)  Atkinson never requested to be added to any company do-not-call list maintained by Momentum, if one existed, during any of these phone calls.  (*Id.* at 61:5–7, 92:15–19.)

## IV.  Analysis

Momentum seeks summary judgment on all of Atkinson's claims (Counts I and II under the TCPA and Count III under the Texas Business and Commerce Code), as well as summary judgment on two of its three counterclaims (one count of tortious interference with prospective business relations and one count of fraud).  Atkinson seeks summary judgment on her claim that Momentum violated the TCPA by placing solicitation calls to a phone number on the national do-not-call registry (Count II) and on all of Momentum's counterclaims.  For the reasons that follow, Atkinson's motion for summary judgment should be granted in full, and Momentum's motion for summary judgment should be granted as to Atkinson's claim under the TCPA based on the use of automated telephone equipment (Count I) and her claim under the Texas Business and Commerce Code.  In all other respects, Momentum's motion should be denied.

**A.      Atkinson's Claim under the TCPA**

Atkinson alleges that Momentum violated two provisions of the TCPA in making solicitation calls to her residential telephone number—the provision prohibiting the use of automated telephone equipment, 47 U.S.C. § 227(b)(1) (Count I), and the prohibition on solicitations to persons on the national do-not-call registry, *id.* at § 227(c)(5) (Count II).  The TCPA's prohibition on the use of automated telephone equipment provides, in pertinent part,

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . .
>
> > (iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B) . . . .

*Id.* at § 227(b)(1).

The TCPA also addresses the creation of a "single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations . . . ."  *Id.* at § 227(c)(3).  This provision establishes a private right of action for "[a]ny person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."  *Id.* at § 227(c)(5).

The TCPA's implementing regulations reiterate that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations . . . ." 47 C.F.R. § 64.1200(c)(2). "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

Momentum makes three primary arguments in support of its motion for summary judgment regarding Atkinson's TCPA claims: (1) Atkinson lacks Article III standing as to these claims because she did not suffer a concrete injury from receiving the calls; (2) Atkinson consented to the solicitations, and therefore the calls did not violate the TCPA; and (3) the summary judgment record establishes that Momentum did not use an automatic telephone dialing system in placing the calls, entitling it to summary judgment on Count I. Atkinson argues that she has conclusively established that Momentum initiated telephone solicitations to a residential telephone subscriber who has a registered number on the national do-not-call registry (Count II). The Court will address each of these arguments in turn.

### i.   Atkinson has standing to sue under the TCPA.

To establish the constitutional minimum for standing under Article III, a plaintiff must have an injury in fact; that injury must be traceable to the challenged conduct of the defendant; and a favorable judgment must be likely to redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish injury in fact, a plaintiff must show she suffered "an invasion of a legally protected interest that is concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internally quotation and citation omitted). Momentum argues, citing a case from the Eleventh Circuit, that Atkinson fails to plead an injury in fact

because she only suffered an intangible inconvenience from listening to an unwanted communication and does not allege that she incurred any charges associated with the calls. *See Grigorian v. FCA US LLC*, 838 Fed. App'x 390, 393–94 (11th Cir. 2020) (TCPA lacked standing where only injury suffered was personal time spent listening to one unwanted voicemail). Yet, as Atkinson points out, the Fifth Circuit is more liberal in its evaluation of a TCPA plaintiff's standing and has held that the mere nuisance arising out of an unsolicited text advertisement is enough to satisfy Article III's requirements. *Cranor v. Star Nutrition, L.L.C.*, 998 F.3d 686, 689–91 (5th Cir. 2021). Atkinson alleges this same injury—the nuisance of receiving unwanted calls, voicemails, and text messages. (Atkinson Decl. [#33-2], at ¶¶ 57 (complaining that the calls were "disruptive, irritating, and deceptive").) Atkinson therefore has standing to file this suit against Momentum.

### ii. <u>Momentum has not established that Atkinson consented to receive its solicitation calls.</u>

Momentum argues that Atkinson's claims under the TCPA fail because she cannot establish that she received "more than one" uninvited telephone solicitation within a 12-month period, for purposes of her do-not-call-registry claim. 47 U.S.C. § 227(c)(5). Rather, Momentum argues, the summary judgment record demonstrates that, aside from the first solicitation on January 16, 2020, Atkinson repeatedly requested Momentum contact her, thereby consenting to all subsequent calls. This argument is without merit.

The TCPA's prohibition on solicitations to those numbers on the national do-not-call registry requires "express" consent of the telephone subscriber for consent to constitute an affirmative defense to the caller's liability. *See* 47 C.F.R. § 64.1200(c)(2)(ii) ("Any person or entity making telephone solicitation (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if . . . [i]t has obtained the subscriber's prior express

invitation or permission."). This consent, however, must be in writing to be valid. *Id.* ("Such permission must be evidenced by a signed, written agreement between the consumer and seller and includes the telephone number to which the calls may be placed . . . .").

Momentum has not satisfied this burden. The summary judgment record does not contain any evidence of a written agreement to exempt Atkinson's registered number from the do-not-call registry. Moreover, Momentum's corporate representative testified in his deposition that Momentum was unable to provide any evidence of Atkinson's written consent for Momentum to solicit her telephone number regarding solar panels. (Anclien Dep. [#35-2], at 62:2–17.) Accordingly, Atkinson's verbal agreement to receive a subsequent call from any of the solicitors is not a viable defense to Momentum's liability.

In a related argument, Momentum attempts to establish that the calls at issue did not constitute "telephone solicitations" as defined in the TCPA because Atkinson invited them. This argument also fails. The TCPA defines "telephone solicitation" as

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's *prior express invitation or permission*, (B) to any person with whom the caller has an established business relationship.

47 U.S.C. § 227(a)(4) (emphasis added). Yet, again, prior express invitation or permission, as applied to do-not-call subscribers, is evidenced *only* by "a signed, written agreement between the consumer and seller" stating that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed. 47 C.F.R. § 64.1200(c)(2)(ii). *See also* In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14032, 14043 (2003) (Although Section 227(a)(4) already excludes from the definition of telephone solicitation calls to any person with their prior express consent, "for purposes of the

national do-not-call list such express permission must be evidenced only by a signed, written agreement . . . .").

Moreover, the Federal Communications Commission has explained that express written consent is required for all calls using "automatic telephone dialing systems," not just those calls placed to subscribers on the do-not-call registry. *See* In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1831 (2012) (We have "revise[d] our rules to require express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines . . . ."). Regarding this consent, the FCC has also explained that "should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." *Id.* at 1844.

Again, because Momentum has failed to come forth with any evidence of Atkinson's express, written consent to receive the solicitation calls at issue, Momentum is not entitled to summary judgment on Atkinson's TCPA claims based on her consent to the calls.

### iii.       Momentum is entitled to summary judgment on Atkinson's claim that it violated the TCPA by using an automatic telephone dialing system.

Momentum argues that Atkinson cannot establish that it employed an "automatic telephone dialing system" (ATDS) when placing the solicitations at issue and therefore cannot prevail on Count I of her Complaint—that Momentum violated § 227(b)(1) of the TCPA. The TCPA defines an ATDS as equipment with the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator," and "to dial such numbers." 47 U.S.C. § 227(a)(1). Last year, the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and

to dial such numbers automatically." *Facebook, Inc. v. Duguid*, -- U.S. --, 141 S. Ct. 1163, 1168 (2021) (internal quotation and citation omitted). The Supreme Court held that this definition encompasses only equipment that has "the capacity *either* to store a telephone number using a random or sequential generator" or "to produce a telephone number using a random or sequential number generator." *Id.* at 1167 (emphasis added). If the equipment only stores and automatically dials numbers but does not randomly generate those numbers, it is not a prohibited ATDS under the Act. *Id.* In other words, "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id.* at 1170.

Momentum argues that its dialing technology is not an ATDS because it uses a technology that only has the capacity to select which stored numbers to call, not the ability to randomly and sequentially produce or store those numbers in the first instance. Atkinson responds that a reasonable jury could find that Momentum used an ATDS and violated § 227(b), as *Duguid* can be read more broadly to define an ATDS as including technology that uses a random number generator to determine the order in which to pick phone numbers from a preproduced list, precisely what Momentum's technology does here.

Atkinson's interpretation focuses on a footnote in the *Duguid* decision, which provides the following:

> For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time. *See* Brief for Professional Association for Customer Engagement et al. as Amici Curiae 19.

141 S. Ct. at 1172 n.7. Yet, as other district courts have explained, using this quote to avoid the clear requirement of the Supreme Court that an ATDS employ a random or sequential generator

12

is misplaced.  Footnote 7 appears in a section of the *Duguid* opinion addressing and rejecting Duguid's counterargument that the phrase "using a random or sequential number generator" modifies only the term "produce," and not "store" in the TCPA's definition of ATDS.  *See id.* at 1171–72.  The excerpt from footnote seven quoted by Atkinson explains how an autodialer might both "store" and "produce" randomly or sequentially generated phone numbers, in the context of a discussion about technology patented in the late 1980s addressed in an amicus brief. *See id.*  In dismissing the counterargument, the Supreme Court stated,

> It is true that, as a matter of ordinary parlance, it is odd to say that a piece of equipment "stores" numbers using a random number "generator."  But it is less odd as a technical matter.  Indeed, as early as 1988, the U.S. Patent and Trademark Office issued patents for devices that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing).

*Id.*  Reading footnote 7 in context, it is clear that the preproduced list of phone numbers referenced therein was itself created through a random or sequential number generator.  *Id.* at 1172 n.7.  *See Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 301 (D.S.C. 2021) (noting the amicus brief "explained that the 1988 technology functions, in part, by creating an 'array' or list of telephone numbers that is sequentially generated and stored" and "[i]n a separate step, the equipment randomly generates a number").

In summary, what is clear after *Duguid* is that a preproduced list that is not sequentially generated or stored cannot be considered an ATDS under the TCPA.  *See Meier v. Allied Interstate LLC*, 2022 WL 171933, at *1 (9th Cir. Jan. 19, 2022) (mem.) (rejecting, in light of *Duguid*, the argument that any system that stores a pre-produced list of telephone numbers and that could also autodial these stored numbers is an ATDS).  This is "precisely the outcome the Supreme Court rejected in *Duguid* when it overturned a decision . . . holding that an ATDS 'need only have the capacity to store numbers to be called and to dial such numbers automatically."  *Id.*

Momentum argues that its summary judgment evidence establishes that its dialing technology does not have the capacity to sequentially or randomly store or generate numbers for the purpose of making solicitation calls.  Momentum's evidence includes a legal opinion from a law firm regarding the technology's compliance with *Duguid*, excerpts from the technology's manual, and deposition testimony from Momentum's corporate representative.[2]  This evidence describes a dialing system with two available methods for making calls: click-to-call and predictive.  (Anclien Dep. [#32-2], at 55:21–56:6.)  When using click-to-call, a Momentum employee either receives a list of leads to possibly call or specifically selects the prospective customer from a numbers database, then must click a handset icon to initiate the call.  (Legal Opinion [#32-3], at 15.)  When using predictive, however, calls are placed automatically via the system software without an agent initiating the call.  (Anclien Dep. [#32-2], at 56:7–57:12; User Manual [#36-2], at 4.)  It is the technology's predictive mode that Atkinson contends employs a prohibited ATDS.

Yet, according to the legal opinion in the record, which is based on facts provided by the technology company, calls placed in predictive mode are always selected from a pre-loaded, non-random database based on specific algorithms, which are themselves dependent on criteria input by the calling agent.  (Legal Opinion [#32-3], at 16.)  The opinion further states that the subject technology does not have the capacity to store numbers using a random or sequential number generator or to produce numbers using such a generator.  (*Id.*)  The opinion explains that the architect of the technology did not program a random or sequential number generator into the technology and that updating the systems to include number generation capabilities "would require considerable software development and engineering efforts."  (*Id.*)  Rather, "[t]he

---

[2] Much of this evidence is sealed as confidential to protect Momentum's proprietary information pursuant to the parties' Confidentiality and Protective Order.

selection of numbers for potential dialing is determined by campaign parameters manually set by the client and/or [the subject technology company] at the client's direction such as prior number of call attempts, zip code, or called party name." (*Id.*) Sworn deposition testimony from Momentum's corporate representative consistently states that the calls placed in predictive mode are automatically dialed but are selected based on specific criteria input by Momentum employees, such as prior call attempts or zip code. (Anclien Dep. [#32-2], at 56:7–57:12.)

Atkinson has not provided the Court with any summary judgment evidence disputing the factual assertions in Momentum's evidence. Atkinson merely points to the pages from the technology's website indicating that predictive mode is a system that "automatically dials" the numbers based on the desired calls-to-agent ratio and a selected drop-call percentage and Momentum's corporate designee's testimony that in predictive mode calls are placed "automatically" from a stored list. (User Manual [#36-2], at 4; Anclien Dep. [#32-2], at 56:7–57:12.) Yet this evidence only establishes that the dialing in predictive mode is automatic, not that it involves the random and sequential production or storage of numbers, as required by *Duguid*. Atkinson has not provided the Court with any evidence refuting the Momentum's evidence that its technology is not capable of random and sequential number generation. Atkinson has thus failed to raise a genuine dispute of material fact as to whether the technology used by Momentum to place its solicitations to Atkinson constitutes an ATDS prohibited by the TCPA. Momentum is therefore entitled to summary judgment on Atkinson's claim that Momentum violated the TCPA by using automatic telephone equipment in violation of § 227(b)(1) of the TCPA.

**iv.**   **Atkinson is entitled to summary judgment on her do-not-call registry claim.**

Atkinson argues that she has conclusively established that Momentum initiated telephone solicitations to a residential telephone subscriber who has a registered number on the national do-not-call registry (Count II) and that Momentum cannot prevail on any of its affirmative defenses as to this claim  To prevail on her claim under § 227(c), Atkinson must prove that she placed her cellular phone number on the national do-not-call registry and that Momentum placed more than one solicitation call to that number within a 12-month period.  *See* 47 U.S.C. § 227(c)(5).

Momentum argues that Atkinson has failed to demonstrate as a matter of law that it made all of the calls in question, because the first and second calls to Atkinson were placed by a representative of Smart Solar, not Pro Custom Solar d/b/a Momentum, and five of the calls at issue were missed calls with no audio recordings.  Momentum also reiterates its argument that Atkinson expressly consented to the calls.   The undersigned has already concluded that Momentum failed to prevail on its affirmative defense of consent.

As to which entity initiated the calls, Momentum argues the first two calls were placed by a third-party lead generator, not Momentum, and Atkinson fails to establish that Smart Solar acted with Momentum's actual or apparent authority as to those calls under the law of agency. *See In re Jt. Pet. Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6596 (2013) ("[A] seller . . . may be held vicariously liable under federal common law principles of agency for TCPA violations that are committed by third-party telemarketers.").   The Court need not resolve the parties' dispute about the alleged agency relationship between Smart Solar and Momentum.  The undisputed summary judgment record establishes that a representative from Momentum called Atkinson on January 17, 2020, inquiring about a good time for an in-person consultation regarding the purchase of solar panels. (Audio Recording [#34-7].)  After receiving five missed

calls Atkinson believes were initiated by Momentum, Atkinson received a new solicitation from Momentum on January 28, 2020, again inquiring about Atkinson's possible interest in solar panels.  (Audio Recording [#34-8].)

The summary judgment record therefore establishes that Atkinson received more than one call from Momentum during a 12-month period, despite her number being listed on the national do-not-call registry.  Atkinson seeks summary judgment on her do-not-call registry TCPA claim as to liability only.  Any evidence adduced at trial establishing that additional calls were placed by third parties acting on behalf of Momentum will be relevant to the question of Atkinson's damages, an issue not to be resolved here.  Atkinson is therefore entitled to summary judgment on this claim.

**B.      Atkinson's Claim under the Texas Business and Commerce Code**

Atkinson's Complaint also asserts a cause of action under Section 302.101 of the Texas Business & Commerce Code.  Section 302.101 prohibits sellers from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.  Tex. Bus. & Com. Code § 302.101(a).  Momentum argues it is entitled to summary judgment on this claim because the recordings of the solicitations at issue demonstrate that they are statutorily exempt from this certification requirement.  The undersigned agrees.

Section 302.101 does not apply where the person conducting the solicitation (A) does not intend to complete or obtain provisional acceptance of a sale during the telephone solicitation; (B) does not make a major sales presentation during the telephone solicitation but arranges for a major sales presentation to be made face-to-face at a later meeting between the salesperson and

the purchaser; or (c) does not cause an individual to go to the purchaser to collect payment for the purchase or to deliver an item purchased directly following the solicitation.  *Id.* at § 302.059(1).  The call recordings do not reflect any attempt by Momentum to complete a sale of solar panels or to make a sales presentation, only to generate interest in the product for the purpose of scheduling an in-person sales meeting.   Additionally, Momentum's corporate designee testified that Momentum does not intend to complete a sale during its telephone solicitations, make major sales presentations during its calls, or collect payment immediately following a call, and nothing in the summary judgment record disputes these assertions. (Anclien Dep. [#32-2], at 89:7–90:7.)  Because the solicitations at issue fall within the statutory exemption, Momentum is entitled to summary judgment on Atkinson's state law claim.

## C.    Momentum's Counterclaims

Momentum asserts counterclaims against Atkinson for tortious interference with prospective economic relations, promissory estoppel, and fraud.  (Counterclaim [#12], at ¶¶ 13– 27.)  Momentum alleges that Atkinson initiated a malicious campaign to fraudulently schedule appointments for solar-panel installation, falsely claiming to be interested in Momentum's services in furtherance of a planned lawsuit against Momentum.   Momentum believes it is entitled to partial summary judgment on its claims of tortious interference and fraud as to liability because Atkinson admits she misrepresented her interest in solar panels during the solicitation calls, and Momentum's corporate designee provided testimony regarding the expenses Momentum incurs in scheduling in-person sales meetings with prospective customers. Atkinson believes she is entitled to summary judgment as to all three of these claims because Momentum fails to provide any evidence that it suffered actual loss or damages as a result of some legal injury.  The undersigned agrees with Atkinson.

To prevail on a claim for tortious interference with prospective business relations, Momentum must establish that (1) there was a reasonable probability that Momentum would have entered into a business relationship with a third party; (2) Atkinson either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) Atkinson's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  The Texas Supreme Court has explained that "independently tortious" means "conduct that would violate some other recognized tort duty." *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

Momentum argues that its corporate representative's testimony establishes its entitlement to summary judgment on this claim.  Momentum's corporate designee testified that Momentum pays its dialers for their time spent on the phone, a confirmer for the time spent confirming the appointments, a qualification team for the time spent ensuring the home qualifies for solar, a data-and-proposals team that builds out the homes to ensure enough panels will fit on the home, a scheduling team for their time scheduling appointments, and the sales representative for the time spent during the in-person sales pitch.   (Anclien Dep. [#32-2], at 76:13–77:4.) Momentum's summary judgment evidence may establish that it invests significant business resources into each of its solicitations and subsequent sales pitches, but this evidence alone does not entitle it to judgment as a matter of law on this claim.

Momentum has not even attempted to identify the prospective business relationship subject to interference. Without such evidence, Momentum has failed to satisfy its evidentiary burden to establish a reasonable probability that it would have entered into a prospective

business relationship.  *See D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 214 (5th Cir. 2018) (finding defendant not entitled to summary judgment where evidence of future business relationship was merely speculative); *see also Caller–Times Pub. Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18, 24–25 (Tex. App.—Corpus Christi 1993, no writ) (same).  Momentum's hypothetical loss of business relationship is insufficient to entitle it to summary judgment on this claim.

Nor has Momentum provided any evidence of its loss or injury as a result of Atkinson's feigned interest in its products, which is fatal to all three of its counterclaims.  The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).  A claim of promissory estoppel also requires substantial reliance by the promisee to its detriment.  *Fretz Constr. Co. v. Southern Nat'l Bank*, 626 S.W.2d 478, 483 (Tex. 1981); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Momentum asks the Court to grant it summary judgment on two of its counterclaims "as to liability only" without considering whether it actually sustained damages as a result of its alleged injury.  Damages flowing from an actual loss or legal injury is an essential element of all of Momentum's tort claims.  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990); *Coinmach Corp.*, 417 S.W.3d at 923; *Miller*, 229 S.W.3d at 378–79.  Yet Momentum's corporate

designee testified that it has no documentation of any damages for Momentum's counterclaims. (Anclien Dep. [#35-2], at 69:12–22.)  Nor has Momentum identified its injury.

Time spent pitching possible sales of solar panels is not an injury.  This is what Momentum does day in and day out in an attempt to inform prospective buyers about its product and convince them to invest in its solar panels.  None of Momentum's sales pitches guarantee a future business relationship.  This is not just an issue of being unable to quantify damages; Momentum's theory of injury, loss, and damages is pure speculation.  If damages "are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).  Because Momentum has no evidence of injury and damages, Atkinson is entitled to summary judgment on all three of its counterclaims.

## V.  Conclusion and Recommendation

Having considered the parties' cross motions for summary judgment, the responses and replies thereto, the summary judgment record, and the governing law, the undersigned recommends that Defendant Pro Custom Solar LLC's Motion for Summary Judgment [#31] be **GRANTED IN PART AND DENIED IN PART** and Atkinson's Motion for Partial Summary Judgment [#33] be **GRANTED** as follows:

- Momentum is entitled to summary judgment as to Atkinson's claim that Momentum violated the TCPA by making solicitations using an automatic telephone dialing system (Count I);

- Atkinson is entitled to summary judgment as to liability only on her claim that Momentum violated the TCPA by making solicitations to her residential phone number, despite that number being registered on the national do-not-call list (Count II);

- Momentum is entitled to summary judgment as to Atkinson's claim under Section 302.101 of the Texas Business and Commerce Code (Count III);

- Atkinson is entitled to summary judgment on Momentum's counterclaims for tortious interference, promissory estoppel, and fraud;

- Remaining for trial is Atkinson's claim for damages on Count II.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 1st day of September, 2022.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE